JAMES H. BROWN v. THE STATE OF TEXAS.

1. Where the court is satisfied that a defendant who is taken sick during his trial on a charge of felony is too unwell to be present in court at every stage of the trial, the cause should either be temporarily continued, to await his convalescence, or a juror withdrawn and the cause continued.

2. On a trial for felony, no separation of the jury can be allowed, under Article 3070, Paschal's Digest, except with the consent of the party on trial ; it is not within the power of his attorney to give such consent.

3. When such separation takes place, every juror should be under the control of an officer, that no communication may be had with other persons in regard to the cause on trial.

4. In a capital case, this court will ascertain whether there has been any violation of Article 3059, Paschal's Digest, though no exception may have been taken on the trial.

5. There may be other adequate causes, which will reduce a homicide from murder to manslaughter, beside the four provoking causes enumerated in Article 2254, Paschal's Digest.

6. On a trial for murder, where there is evidence of malpractice on the part of the surgeon who attended the deceased, the jury should be instructed that they cannot convict of murder, unless satisfied that the death resulted from the wound, and not from the malpractice of the surgeon.

APPEAL from Fort Bend.    Tried below before the Hon. L. Lindsay.

The appellant was indicted for the murder of one Ted. Benjamin.    The evidence shows that when appellant shot Benjamin, the latter was advancing upon him in an excited and angry manner, swearing he would have his revenge, and denouncing Brown as "a d—d rebel son-of-a-b—h."    No weapon was in the hands of deceased, but an ax and handspike were within his reach when he was wounded by a pistol shot from appellant.    The shot entered the lower part of the abdomen and passed through his body.    The attending surgeon (?) sewed up the wound on one side of the body, and closed it with adhesive plaster on the other.    Benjamin died in seven hours.

On the trial, the attorneys for the State and accused consented to the separation of the jury from the adjournment at night until next morning, the accused not consenting, he being in an adjoining room sick, having been removed by the instruction of his attending doctor during the argument.

The court consented that the jury might separate under

the charge of officers of the court, and they were taken to different rooms under different officers, six jurors being under a deputy sheriff, five colored jurors in an adjoining room under two bailiffs, and one white juror at his own house, under an officer. When the court asked the accused why the sentence of the law should not be passed upon him, or if he had anything to say, he answered, "that he did not consent to the jury separating; that he was sick in an adjoining room; and that he desired an appeal to the Supreme Court."

The court refused to charge the jury, on the application of appellant's counsel, that they could not find the prisoner guilty of murder unless they were satisfied that Benjamin died from the wound, and not from the malpractice of the surgeon.

It appears that from the beginning of the argument up to and including the return of the verdict and the charge of the court and the action of the court and counsel in regard to the separation of the jury, the trial was conducted in the absence of the accused.

Among other charges the court gave the following: "The only adequate causes fixed by our law to reduce the act of killing from murder to manslaughter are an assault and battery;" reciting and quoting the four adequate causes named in the Code (Art. 2254, Pas. Dig.), and proceeding: "These are all the causes which our law allows as adequate causes to reduce the killing of a human being from murder to manslaughter. If any one of these causes is found to exist, from the testimony, then the crime would be simple manslaughter. In the absence of all of them the crime is murder, of the first or second degree, as the jury may determine from the evidence."

There was a verdict and judgment of guilty of murder in the second degree, and assessing the punishment of appellant at five years imprisonment in the penitentiary.

*P. E. Pearson*, for appellant.

*Attorney-General*, for the State.

WALKER, J.—There is some novelty in this case.

Where a defendant in a prosecution for felony is taken ill on the trial, and the court is satisfied, by the opinions of physicians or otherwise, that he is too ill to be present in open court at every stage of the trial, the cause should either be temporarily continued to await his convalescence, or a juror should be withdrawn and the cause continued for the term. The accused should not only be within the walls of the court house, but he should be present where the trial is conducted, that he may see and be seen, hear and be heard, under such regulations as the law has established.

Under our Code of Criminal Procedure it is competent, on the trial of a felony, for counsel to do certain things in the presence of the defendant, but these things strictly pertain to professional acts; but that article of our code (3070, Paschal's Digest) which provides that a jury may be allowed to separate, by consent, in charge of an officer, limits the consent to the defendant alone, so far as he is concerned. It is not an act, either by practice or by our code, brought within the province of counsel. Had the prisoner consented to the separation of the jury contemplated by the statute, he would not be bound in this case, for the separation which took place was not such as is contemplated by the law. When a separation takes place by the consent of the accused, every juror should be under the protection and control of an officer, that no communication may be had with other persons in any wise touching the cause on trial. It is the practice of the courts to permit a juror to retire from the panel for a temporary or necessary cause, and this practice grows out of necessity; but the court should be watchful and

vigilant to see that the law is executed which forbids all improper conduct on the part of jurors, and all intermeddling or tampering with them by parties interested in the suit, their friends, or other persons.

Exception is taken to the charge of the court in the assignment of errors ; but no special exception was taken on the trial ; yet in a felony case it has been the practice of this court to examine the general charge in order to determine whether the accused has been fairly tried. (Villareal v. The State, 26 Texas, 107; and 23 Texas, 557; 27 Texas, 146, 438, 765 ; 28 Texas, 711 ; 29 Texas, 500 ; 31 Texas, 608, 575; 30 Texas, 472 ; 33 Texas, 660.)

The court will not, however, in cases of misdemeanor, reverse a judgment on account of the insufficiency or error of the general charge, unless an exception be taken on the trial. (24 Texas, 154.) In such cases a written charge is not required by the District Court, but in capital cases the court will look at any violation of Article 3059, Paschal's Digest. The charge of the court in this case may have misled the jury. There was no evidence of threats made on condition that the deceased should first be assailed, and the presentation of this question to the minds of the jurors may have led them into an erroneous conception of what the evidence in the case really was. It was error to instruct the jury on the law of adequate cause, which would reduce murder to manslaughter, that the four provoking causes enumerated in Article 2254 were the only causes which could reduce murder to manslaughter. The maxim, *expresio unius est exclusio alterins*, cannot apply to Article 2254. By Article 2252 the Legislature has defined the words "adequate cause." By the expression "adequate cause" is meant such as would commonly produce a degree of anger, rage, resentment, or terror, in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. It

is unfortunate that bad and vicious men can and do find many more means of outraging and insulting others of ordinary temper than those four enumerated in Article 2254. The language employed by the deceased was grossly profane, vulgar and abusive. It was applied to the appellant in the presence of his friends and neighbors; it was such language as in most instances, if applied to men of ordinary temper, was calculated to produce anger, rage and resentment.

It was error in the court under our law (Arts. 2203 and 2204, Paschal's Digest) to refuse giving the charge as asked, concerning the treatment of the wound by the physician, from which the deceased is supposed to have come to his death. Our law undoubtedly changes the rule of the common law, the theory of which was that he who caused the first injury should be held guilty, upon the theory that without the first injury no other would have followed, as resulting from the first.

The judgment of the District Court is reversed and the cause remanded.

REVERSED AND REMANDED.