A. E. Cockrell v. The State.

No. 5104.    Decided April 23, 1919.

Rehearing denied May 21, 1919.

**1.—Assault to Murder—City Charter—Judicial Knowledge—Warrant of Arrest.**

Section 3, of Chapter 3, of the City Charter of the City of Fort Worth, Texas, is a public law, and the courts will take judicial cognizance and knowledge of the contents and provisions thereof, and it is not necessary to prove the same. This section authorizes policemen of said city to make arrests without warrant in cases of felony, under certain conditions.

**2.—Same—Criminal District Court of Tarrant County—Constitutional Law.**

Under section 1, article 5, of the Constitution of Texas, the Legislature had the authority to create and establish the Criminal District Court for Tarrant County. Following Howard v. State, 77 Texas Crim. Rep., 185, 178 S. W. Rep., 506.

**3.—Same—Requested Charge—Illegal Arrest—Aggravated Assault.**

Upon trial of assault with intent to murder, where the question of illegal arrest, claimed by the defendant, was not supported by any evidence, either in behalf of the State, or the defendant, there was no reversible error in refusing a requested charge that the offense could only be aggravated assault under this phase of the case.

**4.—Same—Evidence—Declarations of Defendant—Res Gestæ.**

Upon trial of assault to murder, there was no error in admitting testimony that when the defendant was taken from the car, he declared that the damn policeman had tried to shoot him, as this in the instant case was a part of the res gestæ.

**5.—Same—Bill of Exceptions—Practice in District Court.**

Where the bill of exceptions was approved by the trial court with the statement that no exception was taken, altho objection was made, this was not correct practice, as the bill should have been approved or refused, however, the signature of the trial judge, together with the usual language of approval of the bill, controls the same.

**6.—Same—Charge of Court—Limiting Testimony.**

Where defendant complained that the court erred in failing to limit the purpose for which testimony of the fact that the defendant was indicted for theft and swindling was admitted, but the only objection thereto was that the indictment was returned on the day the evidence thereof was admitted, there was no reversible error.

**7.—Same—Objections to Charge of Court—Statutes Construed.**

Article 735, C. C. P., requires that all objections to the court's charge shall be in writing, and all requested charges shall be in writing and presented to the court before argument begins, and this rule will not be relaxed, altho the trial court, in the instant case orally promised counsel to insert in his charge a limitation of certain evidence, as counsel had opportunity to inspect the court's charge and except thereto as the statute directs.

**8.—Same—Separation of Jury—Burden of Proof.**

Where the record showed that the State fully met the burden in showing that no injury resulted to the accused from a casual separation of the jury, there was no reversible error.

**9.—Same—Verdict By Lot—Practice in District Court.**

Where the record on appeal showed that the jurors decided to put down their several opinions as to the number of years to be assessed against the defendant and divide the sum by twelve, which resulted in five years and a fraction, but thereupon, under suggestion of a juror, fixed the punishment at six years in the penitentiary, to which all the other jurors agreed, the verdict was not by lot, and there was no reversible error.

**10.—Same—Argument of Counsel—Requested Charge.**

In the absence of a requested charge to the argument of State's counsel, asking that the same be withdrawn, there was no reversible error. Following Parshall v. State, 138 S. W. Rep., 770, and other cases.

Appeal from the Criminal District Court of Tarrant County. Tried below before the Hon. Geo. E. Hosey, Judge.

Appeal from a conviction of assault with intent to murder; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Lopp, Robson & Cogdell*, and *A. E. Cockrell*, for defendant:—

On question of jurisdiction of court: Ex parte Towels, 48 Texas, 413; State v. Ginnochio, 18 S. W. Rep., 82; Combs v. State, 44 id., 854.

On question of illegal arrests: Scott v. State, 49 Texas Crim. Rep., 386, 93 S. W. Rep., 112; Earles v. State, 94 S. W. Rep., 464; Cortez v. State, 66 id., 453; Earles v. State, 52 Texas Crim. Rep., 140, 106 S. W. Rep., 138; Nickerson v. State, 69 Texas Crim. Rep., 659, 154 S. W. Rep., 992.

On question of admitting declaration of defendant: Massie v. State, 11 S. W. Rep., 638; Cortez v. State, 66 id., 453.

On question of charge limiting testimony: Hargrove v. State, 26 S. W. Rep., 993; Bennett v. State, 64 id., 254; Scoville v. State, 77 id., 792; Taylor v. State, 100 S. W. Rep., 393.

On question of argument of counsel: McKinley v. State, 52 Texas Crim. Rep., 182, 106 S. W. Rep., 342; Faulkner v. State, 53 Texas Crim. Rep., 109 S. W. Rep., 199.

*E. B. Hendricks,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the Criminal District Court of Tarrant County of the offense of assault to murder and his punishment fixed at six years in the penitentiary.

Briefly stated, the facts show that the prosecuting witness, Harmon, was a plain-clothes policeman in the City of Fort Worth, which was admitted to be incorporated. Information was presented by credible persons to the office of Chief of Police in said city on January 10, 1918, that appellant had stolen three hundred dollars from the company by which he was employed, and that he was about to make his escape, and thereupon said Harmon at once began a search for appellant, finally locating him on what is called the North side in said city; said witness found appellant in a car, which was pursued and overtaken by said witness in another car. Upon overtaking the other car Harmon got out of his car and got in with appellant upon the rear seat and told the driver of appellant's car to take them to the city hall, but as said car came along north Main Street, going in the direction of the city hall, and while near the base-ball park appellant asked Harmon to close the car door on his side, said door having been left open when Harmon got into the car. Thereupon, and while Harmon was trying to close said door and his attention was occupied therewith, he says he heard a gun fire and looking around saw appellant had a gun levelled at his head, and thereupon Harmon grabbed it and just then it fired again and the bullet went through his hand. He says that when appellant fired the first shot he said "God damn you, I will get you;" that from the moment of the firing till they reached the front of the courthouse the two men were scuffling for possession of the pistol, each holding and trying to break the grip of the other; that appellant was ordering the driver to go down this side street and up the other and Harmon was ordering him to go to the courthouse. Also that when they got to the courthouse Harmon called to deputy sheriff Witcher, who was out in front, to come and help him, disarm appellant. Mr. Witcher testified that when appellant resisted, that he pulled him out of the car and asked him why he shot the officer, and appellant said: "The damned policeman tried to shoot me." No effort was made by witness Harmon to obtain a warrant for appellant's arrest after he learned of his having committed a felony, he said that he was looking for the appellant during the time and located him about 2:30 and that he at once went after him; that when he found appellant he told him his name and business and that he was an officer and wanted him to go to the city hall, stating that he was wanted for embezzlement, but did not tell him the amount he was charged with embezzling. Appellant did not ask if he had any warrant nor that any be shown him. This witness said that he was so close to appellant when the first shot was fired that his face was powder burned.

Appellant's driver, a young man named Coffin testified for the State, detailing the efforts he and appellant made to get out of Ft. Worth and to Dallas during the day of the 10th, before going to the North Side, also the circuitous route by which they avoided the downtown streets as they were going through Ft. Worth proper on their way to the North Side, and told many other facts supporting what the State thought was the theory of the suspicious conduct of appellant. Coffin says that he and appellant were coming back from the North Side and he was taking appellant to catch a train, when they met the car in which were the witness Harmon and an employe of the company for which appellant had been working; that when this car passed, appellant told him to "open his car up;" that he did so, but appellant looked back presently and saw that the officer had turned and was coming in close behind them. and thereupon appellant told him to turn first one way then another, which he did but was overtaken and the officer got in the car with himself and appellant. This witness said the first he knew of any trouble in the rear of the car was when the first shot was fired; that he looked and the gun was pointing at the officer's head and appellant said: "God damn you, I will get you," and that there was another shot fired right away and that the two men struggled over the pistol all the way to the courthouse; that both men kept telling him where to go; appellant tried to get him to turn down side streets and the officer told him to go to the courthouse. All this witness could remember of the conversation when the officer got into the car was, that appellant asked him what they wanted him for, and the officer said he did not know, and said, "You will have to find out when you get there." This witness also said there were two bullet holes in the curtain of his car after the affray which were not there before; and he brought the curtain into the court room and showed it to the jury. Officer Witcher testified to being asked by officer Harmon to help him take the pistol way from appellant which he did, pulling him out of the car, and that the conversation took place above detailed. It was admitted by the State that no complaint was filed against appellant prior to his arrest.

Appellant's testimony was substantially, that when the officer came up to the car in which he was going to the train that the following occurred:

"He held the gun against the car and raised the curtain and put his head in and says, 'Is this Mr. Cockrell,' and I says, 'yes,' and he says, 'I will have to detain you,' and I says, 'for what?' and he turned and said 'much obliged to you for bringing me out,' and put his gun in his hip pocket with his back to me and got in the car, and I said, 'What does your warrant charge me with,' and he says, 'Investigation,' and I said 'investigation of what,' and he said, 'Oh I don't know, but we are going to be easy with you,' and I said, 'would you mind stopping here so I can phone Mr.

Parker, my attorney before we go down,' and he says, 'No, No.' I had a gun in my pocket but I hadn't been carrying it; the only reason I was carring it that day was that I had been carrying money back and forth to the camp; six weeks prior to this trouble, I had never carried it at all; I had it in my pocket for I was going to sell it; I needed some money to settle an affair with Mr. Parker and I was short some money and I wanted to sell this gun to make up the deficiency. The first thing that occurred to me was to get that gun out of my pocket and get it down in the car so they wouldn't have that charge against me too; Mr. Harmon didn't search me, and that was my first thought—was to get rid of that gun and get it out of the way, and another thing, I wasn't sure that he was an officer; I had only his word for it, and he showed me no warrant nor any badge, and he was in plain clothes. The car door, as he got in, was swinging open, and I asked him to close the door and at the same time, I reached over and tried the door on the right, and as we both came up, I had the gun out of my pocket and he made a grab for me, and I hung on to the gun and the gun exploded; I didn't have my finger on the trigger or handle; when I went in my pocket for it, I got it by the chamber and we began to struggle over it and in the struggle he had it by the back of the chauffer's head, and I thought to get the barrel down to the floor and it went off the second time, and I says, 'man, you are shot through the hand,' and I called to the chauffer and says, 'Don't go down too close to the curb:' "

He denied making the statement attributed to him in the car by Coffin and officer Harmon, to-wit, "God damn you, I will get you;" and also denied the statement testified to by officer Witcher. This is practically all of the evidence necessary to an understanding of the opinion.

Section 3 of chapter 3 of the city charter of the City of Ft. Worth is stated in the statement of facts to have been admitted in evidence, but the same is omitted from said statement. We observe, however, from an examination of said charter, which we have before us, and which was passed by the Thirty-first Legislature, that section, 6 of chapter 13 of said Act especially provides that this Act shall be a public law and that the courts shall take judicial cognizance and knowledge of the contents and provisions thereof and that it shall not be necessary to plead or prove the same. This, we think, sufficiently authorizes us to take judicial cognizance of the terms of sec. 3, chapted 3 of said charter which shows that policemen of the City of Ft. Worth are authorized to make arrests without warrant when it is represented to such policemen by some credible person that a felony has beeen committed and that the offender will probably escape if the arrest is delayed to procure a warrant.

Appellant's first contention is that the Criminal District Court of Tarrant County is a court created by the Legislature without warrant in the Constitution and that all its acts are void.

Sec. 1, art. 5 of our Constitution provides as follows: "The Legislature may establish such other courts as it may deem necessary, and prescribe the jurisdictions and organizations thereof, and may conform the jurisdictions of the distirct and other inferior courts thereto." This sufficiently authorizes the creation of criminal district courts and the conformation of the jurisdictions of the other district courts having jurisdiction in the same territory, to that of such criminal district courts, and to confer upon such criminal district courts exclusive jurisdiction of criminal matters within such territory. Howard v. State, 77 Texas Crim. Rep., 185, 178 S. W. Rep., 506.

Appellant also contends that the trial court erred in refusing to give his special charge No. 2, which is as follows:

"You are further charged as part of the law in this case that if you find and believe from the evidence that at the time that defendant shot Dennis Harmon (if he did shoot the said Dennis Harmon) if he believed that the said arrest was illegal viewing it from the standpoint of the defendant alone, or if you have a reasonable doubt thereto you will find the defendant guilty of no higher offense than aggravated assault." This special charge seeks to reduce the offense of appellant, if any, to aggravated assault upon the theory that his action in shooting at the policeman was prompted by passion resulting from an adequate cause, to-wit; his illegal arrest. This is a correct legal proposition but it is necessary for even a correct theory to have some support in evidence, before it becomes the duty of the trial court to submit the law thereof to the jury. Appellant testified that he asked the officer what his warrant was for and that the officer replied "Investigation," and that they started for the city hall and while on their way, he thought of the fact that he had a pistol and fearing that they might prefer a charge against him for carring a pistol he took same out of his pocket intending to secrete the same, but that just as he had the gun out the officer made a grab for him and he hung on to the gun and the gun exploded. He further says that he did not have his finger on the trigger or the handle, that he had it only by the chamber and further that as he and the officer struggled over the pistol it went off the second time and he said to the policeman, "man, you are shot through the hand." There is nothing in the testimony to show that appellant believed that his arrest was illegal nor that he shot to free himself from such arrest. His whole claim was that the shooting was accidental. There is nothing in the evidence calling for the law contained in the special charge and the court correctly refused the same.

What we have just said disposes of most of the other contentions of appellant, which are regarding various phases of one's rights in case of an illegal arrest. To discuss this at length would be academic, as it is beyond dispute that under the evidence, the question of the

illegality or otherwise of his arrest did not enter into appellant's mind or motive in doing the shooting. The State's evidence showed that he was in the attitude of a man arrested for a felony and told he must come to headquarters to which he starts without demur or objection, and that while on the way he asked the officer to close the door of the car on the opposite side from him, and while the officer's attention is distracted by the effort to close the door, that the appellant draws a pistol and without a word fires it at the officer's head, powder burning his face and accompanied such action with the statement to the officer that he would get him. Appellant's theory is entirely a claim of accidental discharge of the pistol which he had taken out of his pocket for the purpose of secreting in order to avoid a charge of unlawfully carrying arms on his person. There is no possible room for any theory of defense or justification based on illegal arrest.

Appellant objected to the evidence of the witness Witcher to the effect that when he pulled appellant from the car he asked him what he shot the officer for and that appellant told him that the ''damn policeman had tried to shoot him.'' The trial court approved appellant's bill of exceptions to this language. with this statement. ''Objection made but no exception taken,'' following that with his signature and the usual language in the approval of the bill. This is not the correct practice. If, in fact, no bill of exceptions was taken the trial court should have refused to approve this bill, but since same is approved by him, even though it contains his statement that no exceptions were taken, such approval of the court of the bill will control his contradictory statement and we would be required to consider such bill as approved. However, we conclude there was no error in admitting the testimony of officer Witcher, as it is very clearly shown that the parties had struggled over the pistol continuously during the few minutes drive from where the shooting occurred, to the front of the courthouse where officer Witcher was standing, and he at once helped to take the pistol from appellant, who immediately made the statement complained of. Clearly this statement was res gestae and admissible.

Appellant also says the court erred in failing to limit the purpose for which evidence of the fact that appellant was indicted for theft and swindling was admitted. Reference to the bill taken shows that the only objection made at the time was that the indictment had been returned the very day on which evidence thereof was offered in the instant case. Such an objection is not tenable.

Our statute, article 735, C. C. P., clearly provides that all objections to the court's charge shall be in writing. and all requested charges shall be in writing and presented to the court before the arguments begin. If the trial court, in the instant case, orally promised counsel for appellart to insert in his charge a limitation to the effect and purpose of this evidence and did not do so, at most

as far as we are concerned, this would be an act of bad faith on the part of the trial court, but certainly it does not relieve the counsel of appellant from inspecting said charge before the same was presented to the jury and of reserving his proper exceptions thereto in writing and of presenting his special charge to cover any defects in said main charge. If the trial court had failed or refused to allow proper inspection of his charge as originally written, we would hold the same reversible error, but no such state of case is here presented. The plain statutory direction to the appellant to present his exceptions to the charge in writing, was disregarded. It is to be also presumed that appellant was present when the charge was read to the jury, and if we were disposed, under any sympathetic construction of the statute to hold that appellant might have had a right to rely on the promise of the court to write certain things in his charge, still, when the charge was read and appellant necessarily discovered that said matters were omitted, it certainly was his duty at that time to have asked for such correction in the main charge, or for time to prepare a special charge supplying said defects and limiting the purpose of such evidence, and to have taken his timely bill of exceptions if the court refused to either correct his charge or to give him time to prepare and present such special charge. Nothing of this kind appears in the record, and as presented we see no error in the action of the court which would call for reversal.

Complaint is also made of misconduct on the part of the jury in separating while they were deliberating upon the case. Proof was adduced upon the hearing before the court of the motion for new trial and it is made to appear that the criminal district courtroom is two flights of stairs up from the ground floor, and that on one occasion while returning to their courtroom one member of the jury was permitted to go up in the elevator which is shown to be too small to accomodate the entire jury. This particular juror was old and crippled and asked permission of the deputy sheriff to go up in the elevator. and as one of the district court judges of Tarrant County was going up the deputy sheriff asked him to accompany the juror and see that he talked to no one. The remainder of the jury walked up the stairway and when they reached the floor on which their courtroom was the other juror and the said district judge were there waiting for them. Said judge and the elevator man both swore that no one spoke to the juror on the way up. Said juror was ill and not able to be at the hearing.

Separation of the jury is forbidden by our statute and when same occurs the burden is upon the State to show that no injury could reasonably have resulted to the accused therefrom. We think the State fully showed that fact and met that burden in this case. The other misconduct complained of was that the jury came to their verdict by lot. We do not think this sustained by the evidence ad-

duced. The proof shows that when the proposition was discussed in the jury room of putting down what each man thought should be appellant's term of years and dividing same by twelve, that same was objected to by some of the jurors who knew this was wrong. The jurors then decided to put down their several opinions and divide this by twelve just to see where it would bring them to, and the result was five and a fraction years. Thereupon some jurors moved that they fix the punishment of appellant at six years to which all the others agreed. This was not disputed and in our opinion no error is shown.

Appellant objected to certain remarks of the State's attorney in his closing argument. No special charge was presented to the court asking that the jury be instructed not to consider such remarks. This court has held almost uniformly that where no special charge is presented that the error, if any, will not be considered reversible. Kennedy v. State, 19 Texas Crim. App., 618; Young v. State, 19 Texas Crim. Rep., 536; Jones v. State, 23 S. W. Rp., 793; Lancaster v. State, 35 S. W. Rep., 165; Dies v. State, 56 Texas Crim. Rep., 32, 117 S. W. Rep., 979; Felder v. State, 59 Texas Crim. Rep., 144, 127 S. W. Rep., 1055; Parshall v. State, 62 Texas Crim. Rep., 177, 138 S. W. Rep., 759.

There being no reversible errors appearing in this record, the judgment of the lower court will be affirmed.

*Affirmed.*

ON REHEARING

May 21, 1919.

LATTIMORE. Judge.—Appellant has filed a motion for rehearing consisting of a reference to a number of the holdings in our former opinion, and complaining thereof, but without any citation of authorities or an advancement of any substantial reason why we were in error.

A review of the same fails to convince us that our former opinion was not correct and the motion for rehearing is overruled.

*Overruled.*