Doyle Edward SKILLERN, Appellant,

v.

The STATE of Texas, Appellee.

Charles Victor SANNE, Appellant,

v.

The STATE of Texas, Appellee.

Nos. 55337 and 55338.

Court of Criminal Appeals of Texas.

Dec. 21, 1977.

State's Motion for Rehearing Denied Jan. 18, 1978.

J. Douglas Tinker, Corpus Christi, for Skillern.

Richard D. Hatch, III, Aransas Pass, for Sanne.

John H. Flinn, Dist. Atty., Sinton, William L. Hardwick, County Atty., George West, Gerald C. Carruth and John C. Blanton, Asst. Attys. Gen., San Antonio, Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

PHILLIPS, Judge.

These are appeals from convictions for the offense of capital murder. Punishment was assessed at death for appellant Skillern and life imprisonment for appellant Sanne. See V.T.C.A., Penal Code, Sec. 19.03, and Art. 37.071, V.A.C.C.P.

On October 24, 1974, Patrick Randel, a narcotics agent for the Texas Department of Public Safety, was found shot to death in his locked car at a roadside park in Live Oak County, Texas. Agent Randel had been working undercover in order to purchase illegal drugs from appellant Skillern and his co-defendant, appellant Sanne. When found, Randel's money, his gun, a diamond ring, and some State issued credit cards were missing.

Randel had been last seen by other Department of Public Safety agents at 7:10 p. m. October 23, 1974, when he left a motel room in Beeville accompanied by both appellants. Randel left the State money which was to be used in purchasing the illegal drugs in the motel room. He then left in his car with appellant Sanne and appellant Skillern followed in the car in which appellants had arrived. At approximately 8:10 p. m., the car appellant Skillern had driven returned and appellant Sanne was seen entering Randel's motel room.

Appellants were arrested early the next morning, October 24, in McAllen. Appellant Skillern had the State purchase money and Randel's gun in his possession and appellant Sanne had Randel's credit cards and other effects in his possession. The diamond ring was later found in the seat of the vehicle which transported appellant Skillern to jail in McAllen. Both appellants stipulated to the legality of the arrest and subsequent search. The sufficiency of the evidence is not challenged.

In appellant Skillern's eleventh ground of error and appellant Sanne's seventh ground of error, they allege that the trial court erred in allowing the jurors to separate after the court's charge had been read to them on the hearing on guilt. After the court had read the charge to the jury and before final arguments concluded, the court recessed, at which time the following took place:

"MR. FOSTER [Appellant Sanne's attorney]: May the record show that after the court's charge had been read to the jury and after Mr. Carruth and Mr. Hardwick [the prosecutors] had argued for the State that there was a recess during the argument at which time the defendants through their counsel are objecting or objected that the jury had been allowed to separate without agreement or consent and whereupon counsel for the defendant Sanne moved for a mistrial, said motion was overruled and the defendant objected and excepted and is now stating into the record those actions as well as requesting the Court to grant leave to defendant after the jury has begun their deliberations to perfect a bill of exceptions to the Court's ruling and have it considered as if it were done at this time.

THE COURT: All right, same thing for you?

MR. TINKER [Appellant Skillern's attorney]: Yes, Your Honor . . . ."

At the hearing to perfect the bill of exceptions, testimony showed that the jury had been allowed to separate. Mr. Foster testified that he had seen one juror reentering the courthouse from the courthouse annex. He had also seen another juror outside the courthouse coming from the direction of a grocery store which was located across the street from the courthouse. At the time of this separation, the courthouse was crowded with spectators and law enforcement officers. Foster stated that he had not seen the jurors speak to any of the people in the courthouse.

Mr. Chris Ybanez, the bailiff in charge of the jury, testified that two jurors did leave the jury room. He believed that one juror

had gone to the restroom in the annex and the other went downstairs to the restroom. He stated that he had not seen any of the jurors talk with anyone during the recess. He also stated that there were many spectators in the courthouse.

The appellants cite and rely upon *Goodall v. State*, Tex.Cr.App., 501 S.W.2d 342, where we held that once a jury is allowed to separate after the charge had been read and without the consent of the defendant, the burden is upon the State to rebut the presumption of harm. In the instant case, this presumption was not rebutted. While both the bailiff and Foster testified that they *had not seen* the jurors speak to anyone, they could not testify that the jurors *did not have any contacts* with the spectators. The State failed to offer any affidavits or testimony from the jurors involved. Testimony by a person not proven to have had a juror within his sight at all times during a separation merely to the effect that *he did not see* a juror speak to anyone is analogous to testimony by a juror that he *did not hear* certain misconduct in the jury room. Such "did not hear" testimony of a juror as to misconduct, standing alone, has been held by this Court to constitute "no evidence" that such did not occur. *Spriggs v. State*, 160 Tex.Cr.R. 188, 268 S.W.2d 191; *Citizen v. State*, 159 Tex.Cr.R. 519, 265 S.W.2d 109. The State having wholly failed to rebut the presumption of harm from violation of said mandatory statute, such violation constituted reversible error.

The remaining grounds of error urged by appellants pertain to matters that will not likely arise upon another trial, for which reason we omit their discussion.

For the reasons stated, the judgment as to each appellant is reversed and the causes remanded.

DOUGLAS, J., concurs in the result.

VOLLERS, J., not participating.

ONION, Presiding Judge, concurring.

I reluctantly agree that these death penalty convictions must be reversed because of the improper separation of the jurors and the failure of the State to rebut the presumption of harm that arises. I feel that a better explanation is necessary so that the action of the court will be better understood by the bench and bar, the news media, the public and all concerned. I think it should be made plain that the reversal is predicated upon the violation of a mandatory statute, Article 35.23, Vernon's Ann.C. C.P., a statute not even mentioned in the majority opinion.

Courts have for a long time had an interest in protecting jurors from outside influences. The common law rule was "that the jury be kept together without meat or drink until a verdict was reached. 3 Blackstone; 375"; *People v. Wilson*, 400 Ill. 461, 477, 81 N.E.2d 211, 219 (1948); 23A C.J.S. Criminal Law § 1356a. The common law rule was codified in some jurisdictions and modified in others. The concern about removing the jury from contact with interested parties or merely curious third parties was eventually embodied in the various Codes of Criminal Procedure of this state. These statutes prohibiting the separation of the jury were designed to preserve the purity of the jury and to insure a fair and impartial trial. In *English v. State*, 28 Tex. App. 500, 13 S.W. 775, 776 (Court of Appeals 1890), the court in discussing Article 687 of the Code of Criminal Procedure then in effect discussed such safeguards:

". . . In a felony case, to secure the efficiency and purity of the trial, it has been deemed necessary that the jury shall not be allowed to separate, and, if allowed by consent of parties, they must, during separation, each individual, be in charge of a trusted officer of the court, who will see to it that their purity and efficiency are preserved."

Article 623, Vernon's Ann.C.C.P., 1925 (as amended Acts 1955, 54th Leg., p. 795, ch. 288, § 3), prohibiting the separation of jurors in capital cases after they have been sworn [1] and Article 668, Vernon's Ann.C.

---

1. Said Article 623 reads:
   "The Court may adjourn veniremen to any day of the term. In felony cases when jurors have been sworn in a case, those so sworn shall be kept together and not permitted to separate until a verdict has been rendered or

C.P., applying the same rule in non-capital felony cases,[2] were typical of the statutes enacted prior to the present Code of Criminal Procedure enacted in 1965.

These statutes and their forerunners when construed in connection with Article I, § 10 of the State Constitution, were held to be imperative and mandatory, and a separation of the jury, except under the conditions imposed, was fundamental error. *McCampbell v. State*, 37 Tex.Cr.R. 607, 40 S.W. 496 (1897); *Brown v. State*, 38 Tex. 482 (1873); *English v. State*, supra; *Pearson v. State*, 145 Tex.Cr.R. 87, 165 S.W.2d 725 (1942). Under these prior enactments, when there was a separation of the jurors *at any time* after they were sworn and impaneled, without the consent of the parties, it became incumbent on the State to show that such jurors did not mingle or converse with anyone not a member of the jury. *Green v. State*, 156 Tex.Cr.R. 22, 238 S.W.2d 775 (1951); *Newton v. State*, 114 Tex.Cr.R. 537, 26 S.W.2d 233 (1930). This was so because when such separation occurred injury was presumed unless the State rebutted such presumption. *Norwood v. State*, 120 Tex.Cr.R. 510, 48 S.W.2d 276 (1932). "Without a complete showing of noninterference with the jury by anyone outside its number, we cannot say that a separation—as the same is denounced by statute—did not occur. See Arts. 623 and 668, C.C.P." *Green v. State*, supra. See also *Cockrell v. State*, 85 Tex.Cr.R. 326, 211 S.W. 939 (1919).

Permitting jurors to separate or go to their homes unaccompanied by an officer has often resulted in reversals. See, e. g., *Poston v. State*, 121 Tex.Cr.R. 583, 51 S.W.2d 362 (1932); *Osborne v. State*, 136 Tex.Cr.R. 125, 124 S.W.2d 366 (1939); *Gant v. State*, 55 Tex.Cr.R. 284, 116 S.W. 801 (1909); *Garner v. State*, 89 Tex.Cr.R. 486, 231 S.W. 389 (1921); *Wells v. State*, 155 Tex.Cr.R. 592, 238 S.W.2d 208 (1951).[3]

With the enactment of the 1965 Code of Criminal Procedure Article 35.23, Vernon's Ann.C.C.P., replaced former Articles 623 and 668 eliminating any distinction between capital and noncapital felony cases regarding the separation of the jurors. *Smith v. State*, 437 S.W.2d 835 (Tex.Cr.App.1968); Comment, "The Texas Code of Criminal Procedure," 44 Tex.L.Rev. 983, 1007.

Said Article 35.23, supra, reads as follows:

"The court may adjourn veniremen to any day of the term. When jurors have been sworn in a felony case, the court may, at its discretion, permit the jurors to separate until the court has given its charge to the jury, after which the jury shall be kept together, and not permitted to separate except to the extent of housing female jurors separate and apart from male jurors, until a verdict has been rendered or the jury finally discharged, unless by permission of the court with the consent of each party. Any person who makes known to the jury which party did not consent to separation shall be punished for contempt of court. If such jurors are kept overnight, facilities shall be provided for female jurors separate and apart from the facilities provided for male jurors. In misdemeanor cases the court may, at its discretion, permit the jurors to separate at any time before the verdict. In any case in which the jury is permitted to separate until they have returned a verdict, unless by permission of the court, with the consent of the attorney representing the State and the defendant, and in charge of an officer."

the jury finally discharged; provided, however, that when such jurors are kept overnight, facilities shall be provided for female jurors separate and apart from the facilities provided for male jurors, and such juries shall be permitted to separate to the extent of housing female jurors separate and apart from male jurors."

2. Said Article 668 reads:

"After the jury has been sworn and impaneled to try any felony case, they shall not be

3. Where the separation was momentary and no opportunity existed for anyone to communicate with the jury, the separation was not prejudicial. *Sheffield v. State*, 151 Tex.Cr.R. 334, 206 S.W.2d 1016 (1948); *Austin v. State*, 375 S.W.2d 308 (Tex.Cr.App.1964).

permitted to separate, the court shall first give the jurors proper instructions with regard to their conduct as jurors when so separated."

It can be readily seen that some of the rigidity of the former statutes was eliminated. Instead of forbidding separation at any time after the jurors are sown and impaneled, Article 35.23, supra, permits the jurors in felony cases to separate at the court's discretion until the charge to the jury is given. The retention of the provision forbidding separation after the charge is given is best expressed in 72 A.L.R.3d 248, 253:

". . . courts appear to continue to take a more serious view with regard to separations after submission of the cause to the jurors for deliberation than to prior separations, because the chances of outside influence are more pronounced when the evidence is all in, any extralegal information then tending to have a greater effect on the verdict, and moreover, because, when the trial is nearing its end, the danger of tampering with the jury is considerably greater."

Article 35.23, supra, must, of course, be read in light of our bifurcated trial system established by Articles 37.07 and 37.071, Vernon's Ann.C.C.P. Where the jury is required or is chosen to assess punishment, there may well be two charges given, one at the guilt-innocence stage of the trial and another at the penalty stage of the trial. In such cases there are two periods of the trial when the separation of the jury is forbidden except under the conditions imposed under the statute. As explained in *Sierra v. State*, 476 S.W.2d 285 (Tex.Cr.App. 1971), sequestration is required only after a charge is given and before the jury renders a verdict on that charge. Once the jury reaches a guilty verdict during the guilt or innocence phase of the trial, it is again within the discretion of the trial court to permit the jury to separate until the charge on punishment is given. If separation is permitted after the return of a guilty verdict at the court's discretion but prior to the charge at the penalty stage of the trial

being given, there is no presumption of harm. *Johnson v. State*, 469 S.W.2d 581 (Tex.Cr.App.1971). In such situation the burden is no longer on the State to show that nothing prejudicial occurred during the jury's separation, but the burden is on the defendant to show that he was injured by the court's action. *Johnson v. State*, supra.

However, where the separation occurs after the charge is given at the guilt stage of the trial, the presumption of harm still prevails, placing the burden on the prosecution to show that no injury resulted or could not reasonably have resulted from such separation. *Goodall v. State*, 501 S.W.2d 342 (Tex. Cr.App.1973); *Green v. State*, 510 S.W.2d 919 (Tex.Cr.App.1974).

The presumption of harm when there is a separation of the jury in violation of an applicable statute and under circumstances which might expose the jurors to improper influences, thus casting upon the State the burden of dispelling such presumption, is not peculiar to Texas. See, e. g., *Pratt v. State*, 48 Ala.App. 341, 264 So.2d 571 (1972); *Ford v. State*, 330 P.2d 214 (Okl.Cr.App. 1958); *Gibson v. State*, 512 P.2d 1399 (Okl. Cr.App.1973); *Green v. State*, 319 P.2d 321 (Okl.Cr.App.1957); *People v. McDonald*, 38 Mich.App. 639, 196 N.W.2d 834 (1972); *In re Winchester*, 53 Cal.2d 528, 2 Cal.Rptr. 296, 348 P.2d 904 (1960), cert. den., 363 U.S. 852, 80 S.Ct. 1631, 4 L.Ed.2d 1734.

In Wharton's Criminal Procedure, 12th Ed., Torcia, Vol. 4, § 552, p. 52, it is written:

"If . . . a separation is apparently unauthorized, prejudice to the defendant will be presumed. In such case, the burden is on the prosecutor to prove that the defendant was not in fact prejudiced. The prosecutor may meet this burden by showing, for example, that the separated jurors were in the charge of an officer or that they were not subjected to any improper outside influence."

With this background, the facts of the instant case should be examined. After the charge was read to the jury at the guilt stage of the trial and after the State's opening argument, the trial court permitted the jury to separate, over the objection and

protest of appellants' counsel,[4] who pointed out that the charge had been read and that the courthouse was full of peace officers "from all over this area"[5] and "full of spectators" to which the court replied, "Well, I know." Appellants then asserted the jury was mingling with the spectators. The court overruled the motion for mistrial, but instructed the bailiff to get the jury back in the jury room. Later the appellants were permitted to perfect their informal bill of exception. Marvin Foster, attorney for the appellant Sanne, testified as to the separation and the objection thereto, and related that thereafter he went directly to the open jury room door and saw five or six jurors there. He then went to the ground floor and he saw the juror Cuevas coming in the west door of the courthouse from the direction of the courthouse annex. Foster later went around the north end of the said annex to go to the grocery store across the street and observed the juror Stainthorpe coming out of the street onto the courthouse square "and he had obviously been at least across the street." The court then stated it had ascertained that "two of them left the area." Chris Ybanez, the bailiff, testified the jurors separated and that "one of them went to the annex building to the restroom, one of them went downstairs, and the rest of them went to the restroom on the inside here." He related some of the women jurors went into a public restroom marked "Jurors Only" and there may have been some women spectators who entered the restroom. He stated, ". . . I will testify I saw one lady juror go in and then I saw some women spectators." The deputy saw juror Cuevas coming up the stairs and told him to report to the jury room. He stated juror Stainthorpe "was in the restroom at the annex building near the door on the outside, and I told him to get back right away." This was all that was developed on the bill of exception, the time span of the separation not

being established. The appellant again moved for a mistrial, and the district attorney opposed the same stating the appellant had failed to show harm. The motion was overruled with the court stating there had been no contact "as far as I know."

Since the charge had been given to the jury, the district attorney was in error as to whose burden it was to show harm. There was a presumption of harm. It may have been relatively easy to rebut the presumption of harm, see and cf. *Barnett v. State*, 50 Tex.Cr.R. 538, 99 S.W. 556 (1907); *McIlveen v. State*, 559 S.W.2d 815 (Tex.Cr.App. 1977), but no effort was made by the State to call the jurors or other witnesses to rebut that presumption at the time of the perfection of the bill of exception or later on a hearing on a motion for new trial.

This then is the record before this court on which we must pass upon appellant's contention. Since the presumption of harm was not rebutted, there is no choice but to reverse the convictions.

I concur in the result reached.

---

4. We are not here confronted with a question of whether the appellant consented to the separation of the jury or whether the record reflects such consent. See and cf. *Romero v. State*, 458 S.W.2d 464 (Tex.Cr.App.1970); *Rhynes v.*

*State*, 479 S.W.2d 70 (Tex.Cr.App.1972); *Green v. State*, supra.

5. The deceased was shown to be a peace officer.