Dan Burton REED, Appellant,

v.

The STATE of Texas, Appellee.

No. 59136.

Court of Criminal Appeals of Texas, Panel No. 3.

Feb. 27, 1980.

Rehearing Denied April 9, 1980.

E. M. Dellinger, Houston, for appellant.

Carol S. Vance, Dist. Atty., Calvin A. Hartmann and Frank Harmon, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, PHILLIPS and DALLY, JJ., and KEITH, Commissioner.

OPINION

QUENTIN KEITH, Commissioner.

Appellant was indicted for the offense of aggravated robbery and the indictment contained an enhancement paragraph charging a prior conviction under the 1925 Penal Code of robbery by assault. Appellant pleaded not guilty but was found guilty by the jury. After having pleaded "not true" to the enhancement count, the jury found the allegation to have been proved and assessed his punishment at confinement for life.[1]

The appellant and a companion (Fred Greene Linthicum, Jr.) robbed the attendants at the Gas Mart Oil Company filling station on Spencer Highway in Pasadena, Texas, on December 23, 1976. Gene Reed and his wife, Jo Ann Reed, were attendants in the station at the time the men entered, appellant pointing a gun at the attendants. The robbers took all of the money they could find in the filling station and fled after warning the attendants not to call the police. Both of the Reeds positively identified both robbers and each agreed that while both participated therein, it was appellant who actually exhibited the pistol.

Appellant presented no evidence in his behalf and does not challenge the sufficiency of the evidence to support the guilty finding of the jury.

In his first ground of error, appellant contends that the court erred in allowing

1. Appellant was tried jointly with Fred Greene Linthicum, Jr., Tex.Cr.App., 594 S.W.2d 459. We have reversed the conviction of Linthicum in a per curiam opinion for the same reasons set out herein, both opinions being handed down upon the same date.

the jury to separate after final argument of counsel in violation of Art. 35.23, Vernon's Ann.C.C.P., the material portion of which is quoted in the margin.[2]

After the charge had been read to the jury on June 28, 1977, the parties (including appellant) signed a written consent form permitting the jury to separate which concluded: " . . . and said jurors are instructed to return to the Court at 9:00 A.M., *Wednesday, June 29, 1977,* to resume their deliberations with the view of reaching a verdict in this case." [3]

Appellant's counsel testified upon the hearing of the motion for new trial that after the arguments had been concluded, all persons other than the jury were excluded from the courtroom since there was no separate room in which the jury could deliberate. Within a few minutes, he noticed members of the jury emerging from the courtroom and he followed them to the coffee shop elsewhere in the building. He knew of the separation before the return of the verdict but made no formal or record complaint of such separation until he filed his motion for new trial on July 11. Counsel's testimony on the hearing was to the effect that while he did talk to the trial judge about the separation, he made no specific objection at the time nor did he move for a mistrial; instead, as he said, "[W]e just left it at that."

It is also shown by the docket sheet in our record that the jury arguments on the guilt-innocence stage of the trial were concluded at 10:40 A.M. and "At 11:00 A.M. the jury returned with a verdict of 'Guilty'."

Seven of the jurors testified at the hearing that after being admonished by the trial judge, they were permitted to go for coffee, and their testimony is that at least nine of the jurors followed the court's cautionary instructions. We do not have any record showing concerning the remaining jurors.

Appellant's counsel, although keeping most of the jurors in sight while they were having coffee, did not see any outside person contacting any of the jurors.

Appellant has made no effort, either in the trial court or upon appeal, to show harm or injury or that any juror was guilty of misconduct during the separation after the argument and before deliberation. He argues that the statutory provisions are mandatory, citing *Goodall v. State,* 501 S.W.2d 342, 343 (Tex.Cr.App.1973), which so holds. He then points to language found in *Green v. State,* 510 S.W.2d 919 (Tex.Cr.App.1974), holding that such matter must be brought to the attention of the trial court in a motion for new trial. Further, the record must show that the appellant did not consent to the separation. *Rhynes v. State,* 479 S.W.2d 70, 73–74 (Tex.Cr.App.1972).

When the record does not show that the appellant personally consented to the separation, the burden is upon the State to rebut the presumption of harm. *Goodall v. State,* supra. Appellant points to the fact that only seven of the jurors were accounted for by the State in the hearing on the motion for new trial. In *McIlveen v. State,* 559 S.W.2d 815, 818 (Tex.Cr.App.1977), the State produced eleven of the jurors who testified upon the hearing and it was stipulated that the twelfth juror would, if present, give similar testimony. Under these circumstances, the Court held that the State had discharged its burden. We have no similar fact showing in this case.

Instead, State's counsel argues that the consent to the overnight separation—until "9:00 A.M., Wednesday, June 29, 1977"—"controlled throughout the remaining guilt/innocence phase of trial." [4] The

---

2. After the court has given its charge, "the jury *shall be kept together, and not permitted to* separate . . . until a verdict has been rendered or the jury finally discharged, unless by permission of the court with the consent of each party. . . . "

3. The italicized words were in handwriting; the remainder of the written instrument, except the caption of the cause, is typewritten.

4. State's counsel cites *Sierra v. State,* 476 S.W.2d 285 (Tex.Cr.App.1971), and *Johnson v. State,* 469 S.W.2d 581 (Tex.Cr.App.1971). We do not find either case persuasive since both

State also argues that we should invoke the presumption of regularity as was done in *Green v. State*, supra. The difficulty we encounter with this argument is that there is no evidence in our record that appellant did, in fact, consent to a separation at any time on the critical date—June 29. Appellant's counsel testified that neither he nor his client agreed to such a separation after the argument and State's counsel made no effort to show additional consent or that the prior written consent was still effective.

Since the State did not rebut the presumption of harm arising from the separation, reversible error is shown. *Goodall v. State*, supra. *Skillern v. State*, 559 S.W.2d 828 (Tex.Cr.App.1977).

The judgment of the trial court is reversed and the cause remanded.

Opinion approved by the panel.

ROBERTS, J., not participating.

involved a separation between the guilt/innocence verdict and the hearing on punishment. In the *Sierra* type separation, the burden of showing harm is upon the appellant.