Ray Randall WARD, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 58099.

Court of Criminal Appeals of Texas,
Panel No. 1.

Sept. 21, 1983.

**134**

Hiram Miller, Herman C. Gotcher, Jr., Austin, Gerald H. Goldstein, George Whitfield Baugh, San Antonio, for appellant.

Ronald Earle, Dist. Atty., and Bill White, Asst. Dist. Atty., Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P.J., and CLINTON, J.

### OPINION

ONION, Presiding Judge.

Appellant was indicted for murder. He was convicted of the lesser included offense of voluntary manslaughter. The jury assessed punishment at sixteen (16) years' imprisonment.

Appellant advances eleven grounds of error. In view of our disposition of the appeal, we need consider only grounds of error one and three.

Initially appellant contends the "District court erred in admitting into evidence, over objection, the testimony of Officer Grote on the positions of the parties at the time of the shooting for the reason that it was based on hearsay." In the third ground of error appellant urges the court erred in admitting Grote's testimony, over objection, because even if the State had proved a conspiracy, any statement by a co-conspirator after the termination of the conspiracy and not in furtherance thereof was inadmissible. Grote's testimony related to the statements of appellant's wife made to him at the scene.

Appellant's wife, Mary Ann Ward, had been previously married to the deceased, James Zigler. They had a ten-year-old son, Kevin, of whom Mary Ann had custody. After the divorce and after Mary Ann's remarriage, there had been ongoing difficulties, in and out of court over support payments and visitation rights. On the morning of January 18, 1976, the deceased

Zigler, accompanied by his girlfriend, Janet Gilles, went to the home of the appellant and his wife, apparently to see Kevin and to discuss visitation rights. As to just what happened is in sharp conflict. Gilles related that she was denied admission into the house although the deceased entered. From outside the house, Gilles heard a loud argument between the deceased, appellant and his wife. She heard appellant warning to deceased that he would be shot if he didn't leave by the count of five. At the count of five deceased was shot by appellant in the chest by a bullet from appellant's pistol. Gilles assisted him from the house, but he collapsed and died on the sidewalk outside. Appellant testified the deceased advanced on his wife (Mary Ann) in an enraged state and he told the deceased to stop before he counted five or he would shoot. He stated he shot only to protect his wife from harm. Mary Ann corroborated her husband's version.

Travis County deputy sheriff Donald Grote, responding to a call, went to 11902 Dove Haven, arriving about 11:05 a.m. He saw a body covered with a sheet in the yard. An ambulance was at the scene with two attendants. Lieutenant Oliver of the Sheriff's office arrived at the same time as Grote. Grote first encountered Gilles and talked to her "a matter of minutes." Grote and Oliver entered the house which an Austin city officer had entered earlier. In the living room Grote saw the appellant Ward and observed Mary Ann Ward in the kitchen on the telephone. Lt. Oliver then arrested and gave appellant his *Miranda* warnings. Mrs. Ward came into the living room and talked to the appellant. She told the officers she was on the telephone with their lawyer, and had been told they didn't have to make a statement and they did not want to make a statement. Grote could not recall, but it was possible that he or Lt. Oliver could have talked to the lawyer. Appellant refused to make a statement without his attorney being present. Nevertheless, the officers continued to talk to the appellant and his wife. Grote then related Mrs. Ward went to a pantry and produced a revolver. Grote took the weapon, left the house, and

placed the weapon in his police vehicle. He returned to the house and then began to question Mrs. Ward. Appellant's whereabouts at the time were never established. Grote then asked Mrs. Ward if she was a witness. Thereafter she told and showed the position of the various parties at the time of the shooting. According to Grote's version, she placed the appellant directly in front of the deceased while she was some distance away against a wall. That was contrary to the testimony of appellant and his wife that the deceased was advancing on her in a threatening manner at the time the shot was fired.

After a hearing in the jury's absence at which most of the above testimony was developed, the court overruled the objection and permitted the evidence before the jury.

In its brief the State contends the evidence was "admissible under the res gestae exception to the hearsay rule."

In *Fisk v. State,* 432 S.W.2d 912 (Tex.Cr. App.1968), this court wrote:

"The general rule is appropriately stated in 24 Tex.Jur.2d, Evidence, Sec. 581, p. 102:

" 'No single rigid principle governs the admissibility of evidence under the rule. On the contrary, in determining what acts or declarations are part of the res gestae, so as to be admissible under the rule, each case must be considered on its own particular facts.'

"In determining the admissibility of spontaneous declarations the element of time is an important factor to take into consideration, but it is not the controlling factor. The paramount factor, upon which time has an important influence, 'is whether the person who made the statement or declaration was still dominated at the time by emotions instigated by the happening of the principal act or event.' 24 Tex.Jur.2d, Evidence, Sec. 585, p. 113. See also 'Res Gestae Confession,' 17 Baylor Law Review 460.

\*      \*      \*      \*      \*      \*

"In *Keefe v. State,* 50 Ariz. 293, 72 P.2d 425, it was said:

" 'The true test in spontaneous exclamations is not when the exclamation was made, but whether under all the circumstances of the particular exclamation the speaker may be considered as speaking under the stress of nervous excitement and shock produced by the act in issue, or whether that nervous excitement has died away * * * '

Such statement was quoted with approval by the Court of Appeals of Kentucky in *Preston v. Commonwealth*, 406 S.W.2d 398, and in turn by this Court in *Ramos v. State*, Tex.Cr.App., 419 S.W.2d 359."

In *Tezeno v. State*, 484 S.W.2d 374, 379 (Tex.Cr.App.1972), it was stated:

"Also, the fact that the exclamation was made in response to a question would not automatically make it less reliable and inadmissible. That an exclamation is made in response to a question is a factor to be considered along with all the surrounding circumstances in determining whether the exclamation was spontaneous. Thus, a leading question would be suspect. But if the requisite state of mind is present, then the fact that a question is asked will not preclude the admission of the exclamation as substantive evidence. *Moore v. State*, 440 S.W.2d 643 (Tex.Cr.App.1969). See Texas Practice, Evidence, McCormick and Ray, Sec. 914 and cases therein cited."

■ We look now to see what predicate the State laid for the admission of the statements. This court has consistently held that there must be a showing in the record that the declarant was excited or emotionally stimulated or in the grip of a shocking event so as to render the statement a spontaneous utterance. See *Scott v. State*, 564 S.W.2d 759 (Tex.Cr.App.1978); *Smith v. State*, 514 S.W.2d 749 (Tex.Cr.App. 1974); *Graham v. State*, 486 S.W.2d 92 (Tex.Cr.App.1972). In the instant case there was a showing of a shooting sometime before, but nothing to show at the time of

the statements that Mary Ann Ward was excited or emotionally upset so as to render the statements spontaneous utterances. While time is not a controlling factor, it is a factor to be considered. The State points out that later in her testimony Mrs. Ward testified that the deceased and Gilles arrived at the Ward house about 10:45 a.m. and then notes Grote's statement he arrived about 11:05 a.m. The time factor was not well developed. Grote related he talked to Gilles for "minutes" before entering the house. After the events already described, Grote took the revolver and placed it in his police vehicle. It was after this that he returned and began to interrogate Mrs. Ward. The exact time after the shooting before the statements were made is not clear from the record. Further, Mrs. Ward's statements were in response to Grote's questions, not volunteered.

■ Here Mrs. Ward was not shown to be nervous or excited, etc. She had talked to a lawyer, over the phone, conferred with the appellant, had stated she did not want to talk on the attorney's advice, and responded only to questions asked by Grote at an unestablished time after the shooting. Upon the record before us we cannot conclude the statements made by appellant's wife were admissible under the res gestae exception to the hearsay rule.

■ We next address the issue of whether the statements of the wife are to be considered admissible under the co-conspirator exception to the hearsay rule. That a conspiracy existed between the appellant and his wife is a proposition not readily apparent from the evidence. It is the burden of the State to establish a predicate by which such a proposition can be evaluated. See *White v. State*, 451 S.W.2d 497 (Tex.Cr. App.1970) (Opinion on Appellant's Motion for Rehearing). To this extent, a review of the cases on this subject suggests that the State must prove (1) that at the time of the statement the alleged co-conspirator was participating in a conspiracy in which the defendant also participated or later joined,[1]

1. See *Morgan v. State*, 519 S.W.2d 449 (Tex.Cr. App.1975); *Whitehead v. State*, 148 Tex.Cr.R.

190, 185 S.W.2d 725 (1945).

and (2) that the statement was made during the furtherance of the conspiracy.[2]

■ The State contends that the circumstances of a long existing conflict between the appellant, his wife and the deceased over the visitation of Kevin coupled with evidence that two months before the shooting appellant's wife had purchased a gun in appellant's name are sufficient to infer a conspiracy on their part to murder the deceased on the day in question. The State further contends that the testimony of Gilles that she was refused admittance to the house on the day of the shooting gives rise to such an inference. We cannot agree. These circumstances, without more, are insufficient to support the proposition that the appellant and his wife were co-conspirators in the murder of the deceased.

■ Even if there was a conspiracy established, her statements were still not admissible. The general rule is that an act or statement of one co-conspirator after the completion of the conspiracy is inadmissible against the accused. *Delgado v. State,* 544 S.W.2d 929, 931 (Tex.Cr.App.1977). Here even if there was a conspiracy the statements were made after the offense was committed and were not made in furtherance of the conspiracy. We conclude the evidence was inadmissible under the co-conspirator exception to the hearsay rule.

■ A judgment will not be reversed for error in the admission of evidence that did not injure the appellant. The issue is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *Cunningham v. State,* 500 S.W.2d 820 (Tex.Cr.App.1973). Here, the admission of Grote's testimony concerning the position of the parties at the time of the shooting, facilitated an effective preemption of appellant's defense that he was protecting his wife from harm. We conclude that the evidence significantly contributed to the conviction of the appellant.

For the foregoing reasons, the judgment is reversed and the cause remanded.

**2.** See *Morgan v. State,* supra; *White v. State,* supra.