**Eugene PRATT, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 01–87–00257–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

March 10, 1988.

Rehearing Denied April 8, 1988.

Will Gray, Houston, for appellant.

John B. Holmes, Dist. Atty. Harris County, Cathy Herasimchuk, Asst. Dist. Atty., for appellee.

Before EVANS, C.J., and SAM BASS and DUNN, JJ.

DUNN, Justice.

A jury found appellant guilty of sexual assault. The court rejected his motion for probation and sentenced him to 16 years confinement.

The only issues at trial were whether complainant consented, and whether appellant used force, threats, or violence, the elements necessary under the statute for sexual assault, Tex.Penal Code Ann. sec. 21.02 (Vernon 1974). Both complainant and appellant testified at trial. Appellant knew complainant from seeing her at a service station where complainant's boyfriend worked. On the night of the offense, appellant went by the apartment project where he formerly lived. As he entered the grounds, he saw complainant going to the washateria in the complex. He joined her and waited with her while she finished her wash. Upon leaving, complainant slipped and fell, and appellant helped her up and helped carry her belongings to her apartment. After this point,

their testimony conflicts about whether complainant consented to their subsequent sexual intercourse.

■ In point of error one, appellant argues that the trial court improperly allowed the State to introduce the arrest warrant and supporting affidavit, over appellant's timely objection that the affidavit was hearsay. After a hearing outside the presence of the jury, the court overruled appellant's objection, finding that appellant had "opened the door as to the validity of the to-be warrants and the reason for the probable cause stated in those warrants."

Appellant contends that he did not open the door to the issue of probable cause. Appellant states that hearsay information concerning probable cause to arrest must be heard by the court but not by the jury. *Ramos v. State,* 395 S.W.2d 628 (Tex.Crim. App.1965). Furthermore, it is reversible error for the trial court to admit prejudicial evidence over an objection that it is hearsay. *Vara v. State,* 466 S.W.2d 315, 316 (Tex.Crim.App.1971).

It is well established that hearsay evidence relating to probable cause is not admissible before a jury if the issue of probable cause is not raised. *Perez v. State,* 678 S.W.2d 85 (Tex.Crim.App.1984); *Gaston v. State,* 574 S.W.2d 120 (Tex.Crim.App.1978). However, as the State argues, if appellant's counsel brings the issue of probable cause before the jury, the door is opened for the State to introduce evidence to show probable cause, including hearsay evidence. *Gaston,* 574 S.W.2d at 121; *Roberts v. State,* 545 S.W.2d 157 (Tex.Crim.App.1977).

The State argues that appellant "opened the door" to the issue of probable cause in the following cross-examination of Officer Wendell, the officer in charge of the follow-up investigation, who took complainant's statement and signed the affidavit for the arrest warrant:

Q. And one of the reasons—as a matter of fact, probably the primary reason you take a statement in these kind of cases, a sworn statement, is because of the constitutional guarantee that no warrant shall issue except on probable cause based on sworn oath or affidavit, correct?

A. I don't know. I'm sure there is some legal reason why we take statements but there are cases in which charges are filed that statements are not taken so I'm not. . . .

Q. Sure. For instance, where a person is in the hospital and is unable to give a statement or unable or is dead, homicide?

A. Right.

Q. But even then someone is going to sign an oath or affidavit setting out the probable cause to go out and arrest that citizen accused of that crime, correct?

A. I believe it has something to do with the officer who files the charges, he is swearing to the affiant that he talked to. He is signing his name on the warrant or on the charge there.

Q. On the affidavit?

A. Based on the affidavit that he has talked to this person.

Q. So the real purpose, the primary purpose of taking that statement, is to establish probable cause for a warrant?

A. Yes, sir.

Q. And to reduce the facts, the known facts, that are being alleged to written form and sworn written form, correct?

A. Yes, sir.

Q. So in that endeavor you routinely take statements and you try to make them complete and thorough as possible, do you not?

A. Yes.

Q. And certainly in a rape case you have handled enough of these crimes to understand that there needs to be some force or violence or threats or much force or violence to cause the complainant to submit to whatever the sexual action is for it to be a sexual assault, correct?

A. That is part of the Penal Code, yes, sir.

Q. So certainly you would have paid attention to any allegations of violence of weapons or threats or force that this complainant told you about, correct?

A. Yes.

Q. You wouldn't have left out the fact that there was a weapon used, would you?

A. No, sir, would not.

Q. And you didn't in this case, did you?

A. I don't believe I did.

Q. And you didn't leave out any punch or allegations of life-threatening threats made or violence or force that she told you about, did you?

A. No, sir.

[Complainant's statement is identified.]

\* \* \* \* \* \*

Q. And is that the complete statement?

A. Yes, sir, it is. It's the original.

Q. And is this the foundation upon which you were able to secure the warrant and the charges of this Defendant?

A. Yes, sir, I was.

Q. You showed that to the D.A.?

A. Yes.

[Complainant's statement is admitted].

\* \* \* \* \* \*

Q. This statement didn't include any threats he had made to her, verbal threats, did it, that you recall?

A. I don't recall, sir.

Q. And it certainly didn't say anything about a weapon being displayed, did it?

A. I don't recall.

Q. And it didn't say anything about him punching her or twisting her or doing anything to inflict injury or any sort of force that would inflict injury, did it?

A. No, sir.

\* \* \* \* \* \*

Q. Did you discuss this statement with the District Attorney's Office?

A. Yes, I did.

Q. Do you remember which district attorney you discussed it with?

A. No, I didn't.

Q. Do you recall them having any concern about whether this statement would justify a sexual assault charge being filed?

A. I don't remember.

Q. Do you remember having any fact [sic] about the fact there doesn't appear to be force, threats, or violence alleged in the statement?

A. I don't remember, sir.

\* \* \* \* \* \*

Q. When you take a statement like this in this kind of a case, before they sign it, do you ask them if it is a complete statement, if there is anything else they want to add to it?

A. Yes, sir.

\* \* \* \* \* \*

Q. You really don't have any independent recollection of what happened on October 9th but you can recognize your own signature and the fact that you took this statement; is that correct?

A. Yes, sir, that's correct.

[On redirect, the State offered the affidavit into evidence.]

At the hearing, the State argued that (1) appellant's questions regarding the probable cause required for the affidavit brought the existence of the affidavit before the jury; and (2) questions regarding possible concerns expressed by the district attorney, about whether force or threats were used, intimated concern over the strength of the case or whether an offense had occurred.

Appellant explained that his initial questions, establishing that one of the reasons for taking a complainant's statement was to establish probable cause, was in response to the following line of questioning by the State on direct examination of Officer Wendell:

Q. Is part of the reason a statement is taken so that if and when a case does come to trial they will be able to refresh their memory?

A. That's correct.

Q. Is there any other reason?

A. It is just operating procedure that we take written statements in sexual assault cases.

Appellant urged his objection that the affidavit was not only hearsay, but contained second-hand and third-hand hearsay. He pointed out that the affidavit was based on complainant's statement given to Officer Wendell, and on the offense report by the officers who conducted the on-scene

investigation. Furthermore, the affidavit contained words of "force," "threat," and "violence" (words tracking the sexual assault statute), which Officer Wendell admitted were not part of complainant's statement, but had been added by the district attorney. Appellant agreed to the admission of some hearsay testimony, but not second-hand and third-hand hearsay about which he would be unable to cross-examine anyone. Officer Wendell had already testified that he had no independent recollection of October 9th, the day he took complainant's statement and signed the affidavit.

Although the court overruled appellant's objection and allowed the introduction of the affidavit, it expressed concern about the words that Officer Wendell admitted had been added by the district attorney. The court deleted the phrase "by force and threat" in one place; however, over appellant's objection, it refused to delete words of "force" in other places. Appellant's objection to "surplusage" contained in the affidavit was also overruled.

The State argues that the affidavit was clearly admissible under the rule of optional completeness, Tex.R.Crim.Evid. 107, which reads:

> When part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, as when a letter is read, all letters on the same subject between the same parties may be given. When a detailed act, declaration, conversation, writing or recorded statement is given in evidence, any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence. 'Writing or recorded statement' includes depositions.

The State contends that appellant put the complainant's written statement into evidence and intimated that it was insufficient to establish probable cause to support the warrant, and that "this opened the door for the State to offer the affidavit to show the statement was rendered sufficient," under rule 107. This argument is without merit.

First, the questions surrounding the introduction of the statement indicated the importance of the statement and why the officer would have included any words of "force," "threat," or "violence," if mentioned by complainant. Second, even if these questions could have been interpreted as challenging the sufficiency of the statement to establish probable cause, the admission of the affidavit would not have assisted in showing that the statement, already in evidence, was sufficient.

Furthermore, the cases cited by the State in support of its contention that the affidavit was admissible under rule 107, all pertain to situations where, after one side had questioned a witness about a particular conversation, the court held that they had opened up testimony in regards to other statements made on the same subject in the same conversation. *Hart v. State*, 447 S.W.2d 944, 950 (Tex.Crim.App.1969); *Trammel v. State*, 145 Tex.Crim. 224, 167 S.W.2d 171, 175 (1942); *Austin v. State*, 712 S.W.2d 591, 594–95 (Tex.App.—Tyler 1986, no pet.) (allowing testimony about statements on the same subject even in a subsequent conversation). These cases make it clear that by questioning Wendell about his conversation with the district attorney and any concerns the district attorney might have had regarding probable cause, appellant opened the door to questions by the State regarding this matter. However, these cases do not support finding that appellant's questions allowed the admission of the affidavit itself.

Appellant cites cases where, under rule 107, the offer of parts of a document or questions about its contents opened the door to the admission of other parts of the document or questions about their content. *See Wintters v. State*, 616 S.W.2d 197, 201–02 (Tex.Crim.App.1981); *Cerda v. State*, 557 S.W.2d 954, 957 (Tex.Crim.App. 1977). We agree with appellant that the affidavit would not have been admitted under these cases. Appellant neither introduced part of the affidavit nor asked questions about its content. The mere mention of the affidavit and questions about the contents of complainant's statement, upon

which the affidavit was partly based, is not sufficient to allow admission of the affidavit under rule 107.

Furthermore, unlike this case, in cases where the appellant was found to have raised the issue of probable cause, the questioning by the defense counsel clearly went to the issue of probable cause. *Brandley v. State,* 691 S.W.2d 699, 708–09 (Tex.Crim.App.1985) (detailed questions about the sufficiency of the basis for filing the complaint, alleging political pressure, were found to open the door under the predecessor to rule 107); *Hicks v. State,* 545 S.W.2d 805, 809 (Tex.Crim.App.1977) (repeated questions concerning the lack of a warrant or any sufficient reason to stop appellant's car raised the issue of probable cause).

Even these cases do not stand for the proposition that once probable cause is raised, the affidavit may be admitted. While hearsay testimony regarding probable cause was allowed in *Brandley,* no affidavit was offered. 691 S.W.2d at 707. In *Hicks,* the issue was lack of a warrant. 545 S.W.2d at 809.

Neither would the instant case fall in the category of those cases where the appellant was requesting a special jury charge on probable cause. *See Roberts,* 545 S.W. at 159. No such jury charge was requested.

We therefore find that appellant did not "open the door" to allow admission of the affidavit, and we hold that the admission of this hearsay evidence was in error.

■ The next question is whether the admission of this hearsay evidence was reversible error. Hearsay evidence improperly admitted will constitute reversible error only if there is a reasonable possibility that the evidence is prejudicial to the defendant or may have contributed to his conviction. *Goodman v. State,* 701 S.W.2d 850, 863 (Tex.Crim.App.1985); *Ward v. State,* 657 S.W.2d 133 (Tex.Crim.App.1983). Appellant argues that given the sharp conflict between the testimony of complainant and appellant, and specifically the contested claims about the use of force, threats, or violence, the hearsay allegations in the affidavit were prejudicial enough to tip the scales in favor of the State and against appellant, especially because appellant is a black man and complainant is a white woman.

Even though the trial court deleted some words added by the district attorney, appellant points to those words of force not deleted and to other parts of the affidavit that he alleges were prejudicial, as well as to language in the arrest warrant, tracking the statute and the indictment, that was also in the affidavit.

The parts of the affidavit alleged to be prejudicial are as follows:

EUGENE MYRON PRATT, hereafter styled the Defendant, heretofore on or about OCTOBER 6, 1984, did then and there unlawfully

intentionally and knowingly by the use of physical force and violence and by threatening the present use of force and violence against PAULINE E. SLOAN, not the spouse of the Defendant and hereafter styled the Complainant, cause the penetration of the vagina of the Complainant by placing his sexual organ in the vagina of the Complainant and without the consent of the Complainant.

PROBABLE CAUSE:

Affiant, W.C. WENDEL, is a police officer with the Houston Police Department reputably employed and worthy of belief. Affiant has reason to believe and does believe that the Defendant committed the above alleged offense. Said belief is based on the following: Affiant has read and reviewed HPD offense report # 061996272 where officers investigated a sexual assault.

\*    \*    \*    \*    \*    \*

The Affiant next learned the Defendant began kissing the Complainant and *forcibly* took Complainant's clothes off and the Defendant undressed, then held Complainant down and had sexual intercourse with the Complainant by placing his penis in the vagina of the Complainant—*all done by force* against the Complainant's consent and wishes. (Underlined words were added by the district attorney.)

The State argues that the admission of the hearsay evidence was harmless. First, the State alleges that by introducing complainant's statement, appellant introduced the same evidence complained of, citing *Adams v. State*, 685 S.W.2d 661 (Tex.Crim. App.1985), and other cases. However, the affidavit was not just based on complainant's statement, but also on the offense report and included words added by the district attorney. Second, the State argues that the "vice" of hearsay was not present because the declarants of the out-of-court statement (Officer Wendell and complainant) testified at trial and were subjected to cross-examination, citing *Anzaldua v. State*, 502 S.W.2d 19 (Tex.Crim.App.1973). The State also argues that the declarants testified about precisely the same facts as contained within the affidavit, citing *Torres v. State*, 552 S.W.2d 821 (Tex.Crim.App. 1977). While complainant and Officer Wendell were subjected to cross-examination, neither the officers who prepared the offense report, nor the district attorney who added the objectionable words, were subjected to cross-examination. Furthermore, Wendell testified that he had no independent recollection of the day he took complainant's statement and signed the affidavit, and thus he could not be cross-examined on the second-hand and third-hand hearsay contained in the affidavit. Moreover, while complainant repeated some of the facts contained within the affidavit, her testimony did not include the language tracking the statute nor the words of "force" added by the district attorney.

In the earlier cases regarding the admission of an affidavit and/or warrant, the courts found that the affidavit's admission, over appellant's objection of hearsay, was reversible error, without stating any analysis. *E.g.*, *Tucker v. State*, 170 Tex.Crim. 113, 339 S.W.2d 64 (1960); *Zorn v. State*, 167 Tex.Crim. 502, 321 S.W.2d 90 (1959); *Hicks v. State*, 167 Tex.Crim. 115, 318 S.W. 2d 652 (1958) (the affidavit was only read to the jury, not introduced into evidence). In *Figueroa v. State*, 473 S.W.2d 202, 204 (Tex.Crim.App.1971), the court, in reversing based on the facts of the particular case, held that where hearsay rebuttals could not have influenced the verdict, and the lowest possible penalty was assessed, the error is not reversible; but if obviously harmful, reversal is necessary. Here, appellant did not receive the lowest possible penalty.

The only cases we have found where admission of an affidavit was held harmless involved an affidavit that did not refute the testimony of the defendant, *Albitez v. State*, 461 S.W.2d 609, 612–13 (Tex. Crim.App.1971); or an affidavit that included the same personally observed facts that the affiant testified about at trial. *Doggett v. State*, 530 S.W.2d 552, 557 (Tex.Crim. App.1975). In the instant case, the affidavit did refute the testimony of appellant. Also, the affiant did not testify at trial to the same facts included in the affidavit because they were not based on his personal observation, but on second-hand and third-hand hearsay.

Furthermore, admission of hearsay testimony has been held reversible error if offered to bolster the testimony of one of the witnesses over that of the defendant. *Urick v. State*, 662 S.W.2d 348, 350 (Tex.Crim. App.1983); *Garrett v. State*, 641 S.W.2d 232, 236 (Tex.Crim.App.1981).

Based on the cases pertaining to admission of an affidavit, the facts of this case, and the affidavit's bolstering effect on the testimony of complainant, we hold that there is a reasonable possibility that the admission of the affidavit was prejudicial. Thus, we cannot determine beyond a reasonable doubt that the error made no contribution to appellant's conviction or to his punishment. Tex.R.App.P. 81(b)(2). We therefore hold that the admission of the affidavit was reversible error.

Point of error one is sustained.

Having sustained point of error one, we need not address appellant's second point of error.

The judgment of the trial court is reversed, and the cause is remanded for a new trial.