TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00470-CR






Angel Mario Ventura-Salmeron, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0981937, HONORABLE BOB PERKINS, JUDGE PRESIDING







Angel Mario Ventura-Salmeron appeals from a judgment of conviction for the
aggravated assault of a public servant, for which the district court assessed punishment at
imprisonment for eighteen years. He complains of error in the jury charge and in the introduction
of hearsay testimony. He also challenges the sufficiency of the evidence. We will overrule these
contentions and affirm.


Background

During the early morning hours of August 3, 1997, a series of traffic accidents
forced the police to close the northbound lanes of Interstate 35 in central Austin. To accomplish
this, two marked Austin police cars with their emergency lights flashing were parked across the
highway at exit 236-B. A fire truck with its emergency lights flashing was a short distance behind
the police cars. Flares were also placed diagonally across the highway to guide traffic onto the
service road. Austin police officers Phillip Shingleton, Trent Watts, and David Mahoney were
assigned to the roadblock. Wearing their uniforms and reflective vests, and using flashlights with
orange cones, the three officers directed both highway traffic and the emergency vehicles that
passed through the roadblock going to and from the various accidents. Over the course of several
hours, hundreds of vehicles were diverted off the interstate at this exit without incident.

At about 4:30 a.m., Shingleton and Mahoney were attending to a tow truck that
was nearing the roadblock from the north. At the same time, Watts saw a vehicle approaching
the roadblock from the south at "a much higher speed than what other traffic was flowing in. I
also felt that it was not going to have time to stop." Watts ran toward the other officers shouting,
"Look out. Look out. Look out." The vehicle, a black pickup driven by appellant, crossed the
line of flares and crashed into one of the police cars. Watts managed to dive out of the truck's
path at the last instant. The pickup brushed Shingleton, throwing him across the center barrier
into the southbound lanes of the highway. Mahoney was not so lucky. The pickup struck him
directly, severely fracturing his pelvis and right leg. Expert estimates of appellant's speed at the
moment of impact with the police car ranged from twenty to forty miles-per-hour.

Lillian Garcia was a passenger in appellant's truck. She told an officer at the scene
that she and appellant spent the evening at a dance club. She said appellant drank eight beers
inside the club, and continued to drink in the parking lot after the club closed. Garcia did not
know how fast appellant was driving, but believed that he was moving at the same speed as other
vehicles on the highway. In her statement to the officer, Garcia said "she was dozing off" but
that "she did see the police vehicles, that she did see the lights, but when she saw them she said
it appeared it was too late and that [appellant] didn't have time to brake." Appellant failed
standard field sobriety tests administered minutes after the accident, but he declined to take a
breath test and his exact alcohol concentration is not in evidence. 

William Brown testified that he was driving north on Interstate 35 at about 4:00
a.m. when he was passed by a black pickup. Both he and the pickup were traveling about seventy
miles-per-hour. At the Manor Road exit, Brown saw flashing lights ahead and began to slow,
moving into the right lane as he did so. The black pickup did not slow down and began to pull
away. At the 26th Street exit, or about eight blocks south of the roadblock, Brown again saw the
flashing lights and "a lot of smoke." When he arrived at the roadblock, Brown saw that the black
pickup had collided with a police car. Brown estimated that he saw the flashing lights of the
police vehicles from one-half to three-fourths of a mile away.

An expert who examined appellant's pickup following the accident determined that
its brakes were not functioning properly prior to the accident. The master cylinder was defective
and, as a result, the front brakes were inoperative. The witness testified that the driver of the
truck would know that the brakes were not in good order because the brake pedal traveled all the
way to the floor before the brakes engaged. He said that he found no evidence of sudden brake
failure, and that the condition was one of long standing.

The indictment accused appellant of aggravated assault of a public servant in that
he


recklessly, by driving a motor vehicle on a public highway at a speed greater than
was reasonable and prudent, and by driving said motor vehicle on a public highway
after consuming an alcoholic beverage, and by driving said motor vehicle while
impaired by the consumption of an alcoholic beverage, and by moving said vehicle
into another lane of the highway when it was unsafe to do so, and by driving
outside a single marked lane, and by keeping an improper lookout, and by driving
said motor vehicle on a public highway equipped with insufficient and inadequate
brakes, cause[d] serious bodily injury to David Mahoney by striking the said David
Mahoney with the said motor vehicle, and the said David Mahoney was then and
there a public servant in the lawful discharge of an official duty, and [appellant]
knew that David Mahoney was a public servant . . . .



(Italics added.) See Tex. Penal Code Ann. § 22.02(a)(1), (b)(2) (West 1994). An aggravated
assault paragraph omitted the allegation that Mahoney was a public servant. See id. § 22.02(a)(1). 
A third, intoxication assault paragraph alleged that appellant


by accident and mistake, operate[d] a motor vehicle in a public place while
intoxicated, when the said [appellant] did not have the normal use of his mental and
physical faculties by reason of the introduction of alcohol . . . into his body, and
by reason of that intoxication caused serious bodily injury to David Mahoney, by
striking the said David Mahoney with said motor vehicle . . . . 



See Tex. Penal Code Ann. § 49.07 (West Supp. 2000). The district court submitted each of these
offenses to the jury, omitting for want of evidence those portions of the aggravated assault
paragraphs italicized above and authorizing appellant's conviction if the jury found that he
committed any one of the remaining reckless acts. See Kitchens v. State, 823 S.W.2d 256, 258
(Tex. Crim. App. 1991) (different theories of offense alleged conjunctively in indictment may be
submitted to jury disjunctively). The jury found appellant guilty of aggravated assault of a public
servant and further found that appellant used a deadly weapon, a motor vehicle, during the
commission of the offense.

Charge on Aggravated Assault of Public Servant

Appellant contends the district court erred by authorizing his conviction for
aggravated assault of a public servant because "(1) the substance of this statute does not accord
with the evidence in this case; (2) the construction of the aggravated assault statute under the facts
of this case leads to absurd results; and (3) judicial approval of the State's use of the aggravated
assault statute as applied to the facts of this case would effectively nullify the clear legislative
intent to make cases of driving while intoxicated which result in serious injuries punishable as the
crime of intoxication assault."

Appellant argues that there is a "self-evident disconnectedness" between the acts
alleged and the "perceived but disregarded risk that [appellant] would cause serious bodily injury
to a public servant," asserting that these acts "have nothing specifically to do with public
servants." This argument mistakenly conjoins separate elements of the offense. A person
commits aggravated assault if one recklessly causes serious bodily injury to another. See Penal
Code § 22.02(a)(1). In this cause, the court's charge required the jury to find that appellant, by
speeding, or by driving while impaired by alcohol, or by failing to keep a proper lookout, or by
operating a vehicle with defective brakes, consciously disregarded a substantial and unjustifiable
risk that his conduct would result in serious bodily injury to another, namely David Mahoney. 
Aggravated assault, ordinarily a second degree felony, becomes a first degree felony if it is
committed against a person the defendant knows is a public servant and while the public servant
is lawfully discharging an official duty. See id. § 22.02(b)(2). Thus, to establish the more serious
offense here, the charge required the jury to find that appellant knew Mahoney was a public
servant. See Salazar v. State, 643 S.W.2d 953, 957 (Tex. Crim. App. 1983) (State must prove
defendant knew he was assaulting officer); Payne v. State, 596 S.W.2d 911, 913 (Tex. Crim.
App. 1980) (defendant's knowledge that person assaulted was officer is element of offense). 
Contrary to appellant's argument, it was not necessary that the same evidence prove both the
reckless conduct and knowledge elements of the offense.

Appellant argues that there was no evidence that he saw Mahoney, if he ever did,
until seconds before he struck him, and that it is absurd to equate "eyesight with criminal
knowledge." Reliance on such an equation, absurd or not, is not necessary in this cause. A
defendant's guilty knowledge usually must be inferred from the circumstances surrounding the
alleged criminal conduct. See Castellano v. State, 810 S.W.2d 800, 807 (Tex. App.--Austin 1991,
no pet.). The evidence in this cause shows that the flashing lights of the police cars and other
emergency vehicles were visible to drivers as far away as three-fourths of a mile. A rational trier
of fact could infer that a driver seeing those lights would know that he was approaching an
accident or other unusual situation, and that police officers and other emergency personnel would
be present. Such an inference is not inconsistent with the allegation that appellant failed to keep
a proper lookout, appellant's argument to the contrary notwithstanding. It is entirely consistent
with the evidence in this cause that appellant saw the flashing emergency lights and was thereby
made aware of the presence of police officers, but that he thereafter failed to slow his pickup to
a reasonable and prudent speed, and failed to keep a proper lookout for police officers as he
approached the roadblock.

Appellant asserts that intoxication assault is the only offense applicable to the facts
of this case. He relies on the doctrine of in para materia, by which statutes dealing with the same
general subject, having the same general purpose, or relating to the same person, thing, or class
must be construed together in order to give full effect to the legislative intent. See Ex parte
Harrell, 542 S.W.2d 169, 171-72 (Tex. Crim. App. 1976). Under this doctrine, when a
defendant's conduct violates both a general statute and a more specific or detailed enactment, the
latter will prevail absent evidence that the legislature intended the general act to be controlling. 
See Cheney v. State, 755 S.W.2d 123, 126 (Tex. Crim. App. 1988). Appellant contends that
aggravated assault and intoxication assault are in pari materia as applied to his conduct, and that
the latter, more specific statute was the proper prosecutorial vehicle in this cause.

Appellant's argument would have greater force if the State had alleged that he
recklessly caused serious bodily injury to Mahoney by driving while intoxicated, that is, if driving
while intoxicated had been the reckless act on which the State relied. Had the indictment so read,
a persuasive argument might be made that the prosecution should proceed under the more specific
intoxication assault statute. But the State's indictment did not allege reckless conduct in the form
of driving while intoxicated. The reckless acts alleged in the aggravated assault paragraphs -- 
speeding, failing to keep a proper lookout, driving a vehicle with defective brakes, and driving
while impaired due to alcohol consumption -- were clearly outside the scope of the intoxication
assault statute. (1) On this record, the in pari materia doctrine does not apply.

Finally, appellant argues that a person whose recklessness endangers the general
public should not be punished more severely merely because, by chance, his reckless conduct
injures a public servant engaged in an official duty. Whatever the merits of this assertion as a
general principle, it is not applicable here. Under section 22.02(b)(2), an aggravated assault is
not punishable as a first degree felony merely because a public servant happens to be injured. See
Sneed v. State, 803 S.W.2d 833, 835 (Tex. App.--Dallas 1991, pet. ref'd). To be guilty of
aggravated assault of a public servant, the defendant must have known that the person injured was
a public servant. See Salazar, 643 S.W.2d at 957; Payne, 596 S.W.2d at 913. An awareness of
the victim's identity as a public servant must be shown even if the assaultive act was committed
recklessly. In other words, it must be shown that the defendant consciously disregarded a
substantial and unjustifiable risk that his conduct would cause serious bodily injury to a person
he knew was a public servant.

The district court did not err by authorizing appellant's conviction for aggravated
assault of a public servant. Issue one is overruled.


Presumption of Knowledge

The district court instructed the jury that "[t]he defendant is presumed to have
known the person assaulted was a public servant if he was wearing a distinctive uniform or badge
indicating his employment as a public servant." See Penal Code § 22.02(c). Appellant contends
this instruction should not have been given because it creates an unconstitutional mandatory
presumption.

There are two types of mandatory presumptions. A conclusive presumption
requires the fact finder to find an elemental fact upon proof of particular predicate facts, while a
rebuttable presumption requires the accused to disprove the elemental fact once the predicate facts
are established. Both types of mandatory presumptions are unconstitutional because they relieve
the State of its constitutionally required burden of proving guilt beyond a reasonable doubt. See
Francis v. Franklin, 471 U.S. 307, 317 (1985); Sandstrom v. Montana, 442 U.S. 510, 524
(1979); Willis v. State, 790 S.W.2d 307, 309 (Tex. Crim. App. 1990). A permissive
presumption, on the other hand, permits but does not require the fact finder to find the elemental
fact upon proof of the predicate facts, and places no burden on the accused to disprove the
elemental fact. Because permissive presumptions do not alter the State's burden of proof, they
are constitutional provided the connection between the predicate and elemental facts is a rational
one. See Ulster County Court v. Allen, 442 U.S. 140, 157 (1979); Willis, 790 S.W.2d at 310.

To protect these constitutional interests, an explanatory instruction must be given
whenever the existence of a presumed fact is submitted to a jury. See Tex. Penal Code Ann.
§ 2.05 (West 1994). The instruction tells the jury that the predicate facts giving rise to the
presumption must be proved beyond a reasonable doubt; that if the predicate facts are proved, the
jury may find that the presumed elemental fact exists but is not required to do so; that the State
must also prove each other element of the offense beyond a reasonable doubt; and that if the jury
has a reasonable doubt as to the existence of the predicate facts, the presumption fails and shall
not be considered for any purpose. See id. § 2.05(2)(A)-(D). If section 2.05 is adequately
incorporated into the jury charge, the presumption to which it applies will be considered
permissive. See Willis, 790 S.W.2d at 310. 

In this cause, the district court's charge on the section 22.02(c) presumption
incorporated the section 2.05 explanatory instruction. Nevertheless, appellant argues that the jury
could have misunderstood the instructions and treated the presumption as a rebuttable one. (2) While
it is always possible for a jury to misunderstand or disregard a proper jury instruction, we must
assume in the absence of evidence to the contrary that the jury understood and followed the court's
instructions. See Hutch v. State, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). Because section
22.02(c), in conjunction with section 2.05, does not require the fact finder to rely on the
presumption, appellant's contention that the presumption is mandatory is without merit. See Fair
v. State, 758 S.W.2d 898, 901 (Tex. App.--Corpus Christi 1988, no pet.).

Appellant urges that even if the section 22.02(c) presumption is permissive, it was
nevertheless unconstitutionally applied to him because, under the facts of this case, no rational
trier of fact could make the connection permitted by the inference. See Allen, 442 U.S. at 157,
163-65. Appellant argues that the fact Mahoney was in uniform was irrelevant to the question of
whether he knew Mahoney was a public servant because there was no evidence that he saw
Mahoney's uniform before hitting him, or at least before it was too late to avoid hitting him. 
Absent such evidence, urges appellant, it would be irrational for the jury to infer that he knew
Mahoney was a public servant simply because the officer was wearing a uniform.

The evidence shows that two police cars, a fire truck, and a tow truck, all well-lit,
were at or near the roadblock as appellant approached in his truck, which also had its lights on. 
Mahoney was wearing both his regular uniform and a bright orange reflective vest with the word
"police" in three-inch-high letters. There was testimony that officers were required by the police
department's general orders to wear such vests at accident scenes. A rational trier of fact could
infer from these circumstances that appellant could and did see Mahoney in uniform in time to
avoid striking the officer, either by slowing to a prudent speed or by keeping a lookout for the exit
to which traffic was being diverted. 

If the district court erred by submitting the statutory presumption to the jury, the
error was harmless beyond a reasonable doubt. See Rose v. Clark, 478 U.S. 570, 582 (1986). 
As previously noted, there was evidence that a driver approaching the roadblock from the south
could see the lights of the emergency vehicles from three-fourths of a mile away, and from this
know that he was approaching a scene at which police officers would be present. As appellant
points out in his brief, this was the theory on which the State primarily rested its case at trial. 
Because we conclude beyond a reasonable doubt that the jury would have found it unnecessary
to rely on the challenged presumption, any error in the submission of the presumption to the jury
was harmless. Issue two is overruled.


Proof of Voluntary Conduct

Appellant contends the evidence is factually insufficient to prove that the conduct
resulting in the injury to Mahoney was voluntary. A person commits an offense only if he
voluntarily engages in conduct, including an act or omission. See Tex. Penal Code Ann. § 6.01(a)
(West 1994). As used in section 6.01(a), voluntariness refers only to one's physical bodily
movements, and means the absence of an accidental act or omission. See Alford v. State, 866
S.W.2d 619, 624 (Tex. Crim. App. 1993).

Appellant asserts that the great weight and preponderance of the evidence
establishes that he did not see Mahoney until seconds before impact, after it was too late to take
effective action to avoid the collision. Appellant urges that insofar as he acted with the knowledge
that Mahoney was a public servant, he was taking "all affirmative steps" to avoid hitting the
officer. From this, appellant concludes that his collision with Mahoney was an accident and not
the result of voluntary conduct.

Appellant's argument assumes that the voluntariness of his conduct was an element
of the offense, or subsumed within an element of the offense, as to which the State had the burden 
of proof. The court of criminal appeals has held, however, that a lack of voluntary conduct is a
defense on which, if the issue is raised by the evidence, the defendant is entitled to an instruction. 
See Brown v. State, 955 S.W.2d 276, 279-80 (Tex. Crim. App. 1997); see also 6 Michael B.
Charlton, Texas Criminal Law § 4.2 (Texas Practice 1994). Appellant did not request an
instruction on the voluntariness of his conduct or object to its absence, and therefore waived his
right to complain on appeal. See Posey v. State, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998).

Appellant's argument is without merit in any event. We have already explained
in our discussion of the previous issues that a rational trier of fact could conclude that appellant
was made aware of the presence of police officers long before he arrived at the roadblock, that
he thereafter recklessly failed to reduce his speed and keep a proper lookout, and that as a result
of this reckless conduct he struck Mahoney. Viewing all the evidence equally instead of in the
light most favorable to the jury's verdict, and considering the existence of the alternative
hypothesis advanced by appellant, the jury's conclusion that appellant recklessly caused serious
bodily injury to Mahoney knowing that he was a public servant is not so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. See Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996); Stone v. State, 823 S.W.2d 375, 381 (Tex.
App.--Austin 1992, pet. ref'd as untimely filed). That appellant did not intend to hit Mahoney and
made a last-second effort to avoid doing so does not render his reckless conduct involuntary. See
Adanandus v. State, 866 S.W.2d 210, 230 (Tex. Crim. App. 1993); Joiner v. State, 727 S.W.2d
534, 536 (Tex. Crim. App. 1987). Issue three is overruled.


Hearsay Testimony

Finally, appellant contends the district court erred by admitting the testimony
regarding Lillian Garcia's statement to the police immediately following the collision. He argues
that the court mistakenly concluded that her hearsay statement was an excited utterance. See Tex.
R. Evid. 803(2). He also urges that the admission of the statement violated his constitutional right
to confront the witnesses against him. See U.S. Const. amend VI. Although he cites article I,
section 10 of the Texas Constitution, appellant does not advance a separate state constitutional
claim.

Appellant's constitutional argument is based on a misreading of Ohio v. Roberts,
448 U.S. 56, 66 (1980). According to appellant, Roberts holds that the admission of a hearsay
statement violates a defendant's confrontation right unless it is shown that the declarant is
unavailable to testify and that the statement is trustworthy. Because Garcia testified at appellant's
trial, she obviously was not unavailable. For this reason, appellant urges that her out-of-court
statement was inadmissible under the Sixth Amendment. In fact, Roberts requires a showing of
unavailability only if the declarant is not present for cross-examination at trial. See id. The Sixth
Amendment confrontation clause is not violated by the admission of an out-of-court statement
made by a declarant who testifies at trial. See White v. Illinois, 502 U.S. 346, 354 (1992); United
States v. Inadi, 475 U.S. 387, 396 (1986). (3) Issue four is overruled.

A statement relating to a startling event made while the declarant was under the
stress of excitement caused by the event is admissible as an exception to the hearsay rule even if
the declarant is available as a witness. See Tex. R. Evid. 803(2). Appellant contends Garcia's
statement was not admissible under this exception because it was not a spontaneous statement
made under the stress of excitement, but was instead the product of police interrogation. 
Appellant further argues that the statement did not relate to the startling event insofar as it
described the events of the evening preceding appellant's arrival at the roadblock and the resulting
collision.

The critical factor in determining if a statement is an excited utterance under rule
803(2) is whether the declarant was dominated by the emotions, excitement, fear, or pain of the
event when the statement was made. See Lawton v. State, 913 S.W.2d 542, 553 (Tex. Crim.
App. 1995). Whether the statement was spontaneous or made in response to questions is a factor
that may be considered in determining the admissibility of the statement, but is not determinative
in itself. See id. The decision to admit the statement is reviewable for an abuse of discretion. 
See id.

Austin police officer Adrian Duran testified that he approached Garcia at the scene
within minutes of the collision. As the two sat on a concrete barrier, Duran first "made sure she
was all right," then tried to "calm her down a bit so that she could talk to me." Garcia
volunteered, "We didn't see the vehicle." Duran testified that Garcia "would calm down a bit
and then she [would] kind of get nervous again [and] start shaking." He added, "She kept going
from being calm and quiet, not saying anything, to jumping right back up, to being nervous,
shaking. She just appeared like she was in basically shock through the whole situation." Duran
asked Garcia "if she wanted to talk to me and let me know what happened." She said she did. 
Duran told Garcia to "tell[] me her story from the beginning, where they had come from to make
sure I got the whole story." Garcia then made the challenged hearsay statement previously
described. Duran said that he "didn't ask her any specific question due to the fact that I didn't
want to put any words in her mouth," but he did occasionally interrupt Garcia to "ask her some
questions regarding time, time tables." As she spoke, Garcia "was staring out into space" and
"looked like she was in shock."

Appellant primarily relies on the opinion in Ward v. State, 657 S.W.2d 133 (Tex.
Crim. App. 1983). In that case, the defendant's wife witnessed him fatally shoot the husband of
his former wife. After speaking to a lawyer and to her husband, and after initially refusing to
give a statement on the lawyer's advice, the wife agreed to answer questions from the police. 
Noting that there was no evidence as to the time that elapsed between the shooting and the
interview, that there was no evidence that she was nervous or excited, and that she spoke only in
response to questions, the court concluded that the wife's statements to the police were not
admissible as excited utterances. See id. at 136.

We believe that Ward is clearly distinguishable on its facts from the cause before
us. Instead, we find the facts of this cause more similar to those in Lawton. There, a police
officer interviewed the declarant at the hospital less than one hour after the declarant witnessed
the fatal shooting of his father-in-law. The officer who conducted the interview testified that the
declarant was "excited and upset" at the time he spoke. The court concluded that the trial court
did not abuse its discretion by admitting the declarant's statements to the officer under rule 803(2). 
See Lawton, 913 S.W.2d at 553-54.

The record reflects that Garcia spoke to Duran alone at the scene of the offense
minutes after the pickup in which she was a passenger had struck a police officer and collided with
a police car. Garcia appeared to be in shock throughout her conversation with the officer. The
officer took care not to put words in Garcia's mouth, although he did interject an occasional
question. We are not persuaded by appellant's argument that Garcia's statement contained such
a wealth of detail as to belie any claim of spontaneity. Considering the nature of the event and
the circumstances in which the statement was made, the district court did not abuse its discretion
by concluding that Garcia was still dominated by the emotions and excitement of the event when
she spoke to the officer.

We also reject appellant's argument that Garcia's description of the evening spent
drinking at the dance club did not relate to the collision. A statement may relate to a startling
event without necessarily describing it. In King v. State, 953 S.W.2d 266, 269 (Tex. Crim. App.
1997), a startling event, the discovery that a person she had spoken to earlier that day had been
killed, prompted the declarant to describe to the police the deceased's earlier comings and goings,
and to suggest who might have killed him. The court held that these statements related to the
startling event and were properly admitted under rule 803(2). See id. The district court properly
concluded that Garcia's description of appellant's actions during the hours leading up to the
collision related to that startling event. Issue five is overruled.

The judgment of conviction is affirmed.



 

 Marilyn Aboussie, Chief Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Yeakel

Affirmed

Filed: February 3, 2000

Do Not Publish

1. We assume the State chose its language carefully, and by impairment due to alcohol
consumption meant a condition short of intoxication. Even if we were to equate impairment with
intoxication, an argument appellant does not make, the other reckless acts alleged by the State do
not implicate section 49.07.
2. Twice in his brief appellant states that the court instructed the jury that the section 22.02(c)
presumption was rebuttable. We find no such instruction in the charge.
3. We note that in cases in which the declarant is not present for cross-examination, a showing
that the declarant is unavailable is required only if the out-of-court statement was made in an
earlier judicial proceeding. See White, 502 U.S. at 354; Inadi, 475 U.S. at 394. Garcia's
statement was not made in a judicial proceeding. We also note that the spontaneous declaration
or excited utterance exception to the hearsay rule is firmly rooted, and therefore such statements
bear sufficient indicia of reliability to satisfy the Confrontation Clause. See White, 502 U.S. at
355 n.8; Penry v. State, 903 S.W.2d 715, 751 (Tex. Crim. App. 1995). 


he lawyer's advice, the wife agreed to answer questions from the police. 
Noting that there was no evidence as to the time that elapsed between the shooting and the
interview, that there was no evidence that she was nervous or excited, and that she spoke only in
response to ques